IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| BRUCE HARRIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GEORGIA-PACIFIC WOOD PRODUCTS LLC, et al.,<br><br>Defendants. | CIVIL ACTION FILE<br>NO. 1:22-CV-2530-TWT |

### OPINION AND ORDER

This is a Fair Labor Standards Act ("FLSA") case. It is before the Court on the Plaintiffs' Motion for Conditional Certification, Notice, and Disclosure [Doc. 18] and the Plaintiffs' Motion for Rule 23 Class Certification [Doc. 36]. For the reasons set forth below, the Plaintiffs' Motion for Conditional Certification, Notice, and Disclosure [Doc. 18] is DENIED, and the Plaintiffs' Motion for Rule 23 Class Certification [Doc. 36] is DENIED.

### I.   Background

The Plaintiff Bruce Harris worked as an hourly employee for the Defendant Georgia-Pacific Consumer Operations LLC ("Consumer Ops") in Fort Smith, Arkansas; and the Plaintiff Roy McCullum worked as an hourly employee for the Defendant Georgia-Pacific Wood Products LLC ("Wood Products") in Taylorsville, Mississippi. (Compl. ¶¶ 30–33). Wood Products is a commercial supplier of wood-based building supplies, including lumber and

subflooring, and Consumer Ops is a producer of household goods, including bath tissue and paper towels. (*Id.* ¶ 16; Defs.' Resp. Br. in Opp'n to Pls.' Mot. for Cond. Cert., at 2). Both Wood Products and Consumer Ops have facilities in more than 30 states across the country, including Arkansas and Mississippi. (Defs.' Resp. Br. in Opp'n to Pls.' Mot. for Cond. Cert., at 2). The Plaintiffs allege that Wood Products and Consumer Ops "jointly operate the manufacturing facilities at which Plaintiffs and the collective and class members were employed." (Compl. ¶ 25).

The Plaintiffs claim that the Defendants' payroll system improperly rounded the time that Georgia-Pacific employees worked to the benefit of the Defendants. (*Id.* ¶ 41). They also claim that such rounding practices resulted in undercompensating employees when they worked overtime and when they worked shifts with an increase in hourly pay based on the particular job or the time of the shift. (*Id.* ¶¶ 42, 46). The Plaintiffs allege that these compensation practices violated both the FLSA and the Arkansas Minimum Wage Act ("AMWA"). (*Id.* ¶¶ 48, 51). Three additional plaintiffs, Gearldean Payton, Rochelle Lawson, and Ray Pickering, seek to opt-in to the present case; Payton and Pickering worked for Wood Products in Mississippi, while Lawson worked for Wood Products in Arkansas. (Defs.' Resp. Br. in Opp'n to Pls.' Mot. for Class Cert., at 3). On October 6, 2022, the Plaintiffs moved to conditionally certify this case as a collective action under Section 216(b) of the FLSA, and on November 21, 2022, they moved to certify a class of plaintiffs under Rule 23.

2

## II. Legal Standard

### A. Conditional Certification

Section 216(b) of the FLSA permits an employee to bring a collective action against his employer as follows:

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). A district court, in appropriate cases, may authorize the sending of notice to potential class members in a collective action. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 886–87 (11th Cir. 1983). "The benefits of a collective action depend on employees receiving accurate and timely notice so that they can make informed decisions about whether to participate." *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (quotation marks, citation, and alteration omitted).

The Eleventh Circuit has endorsed a two-tier approach for determining whether to certify a collective action under Section 216(b).

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and affidavits which have been submitted—whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient

3

> standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

*Hipp*, 252 F.3d at 1218 (citation omitted). The second stage of the certification process is "typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Id.* Based on the factual information gathered in discovery, the district court determines whether the claimants are actually similarly situated and, if not, decertifies the class so that the original plaintiffs may proceed to trial on their individual claims. *See id.* Ultimately, "the decision to create an opt-in class under [Section] 216(b) . . . remains soundly within the discretion of the district court." *Id.* at 1219.

The plaintiffs bear the burden of demonstrating that they are similarly situated with the group of employees they wish to represent. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). While "similarly situated" is not defined in the FLSA, the Eleventh Circuit has advised that "[p]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217 (citation omitted); *see also Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1568 (11th Cir. 1991) (measuring similarity according to "job requirements" and "pay provisions"). "A unified policy, plan, or scheme of discrimination may not be required to satisfy" the similarly situated requirement. *Hipp*, 252 F.3d at 1219

4

(citation and brackets omitted). However, a plaintiff "must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Marsh v. Butler Cnty. Sch. Sys.*, 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003); *see also Thiessen v. General Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (requiring "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan").

### B. Rule 23 Class Certification

Federal Rule of Civil Procedure 23(c)(1)(A) provides that a court must "[a]t an early practicable time after a person sues or is sued as a class representative . . . determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). There are four prerequisites to class certification as outlined in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The proposed class must also satisfy at least one of the alternative requirements in Rule 23(b), which for purposes of this case are found in subsection (b)(3). *See Herrera v. JFK Med. Ctr. L.P.*, 648 F. App'x 930, 933 (11th Cir. 2016). Subsection (b)(3) applies when "[1] the questions of law

5

or fact common to class members *predominate* over any questions affecting only individual members, and . . . [2] a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

The party seeking class certification bears the burden of proving that these requirements are satisfied. *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003). The decision to grant or deny class certification lies within the sound discretion of the district court. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1386 (11th Cir. 1998) (en banc). When considering the propriety of class certification, the court should not conduct a detailed evaluation of the merits of the suit. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974). Nevertheless, the court must perform a "rigorous analysis" of the particular facts and arguments asserted in support of class certification. *Falcon*, 457 U.S. at 161; *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984). Frequently, that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351–52 (2011).

### III. Discussion

Before the Court here are both the Plaintiffs' Motion for Conditional Certification and their Motion for Rule 23 Class Certification. Without the benefit of conducting initial discovery, the Plaintiffs filed their Rule 23 Motion before filing a reply brief in support of their Conditional Certification Motion. The Court first considers the Rule 23 Motion and then turns to the Conditional Certification Motion.

#### A. Rule 23 Class Certification

In their Rule 23 Motion, the Plaintiffs move to certify a class consisting of the following individuals: "All hourly employees who worked for Georgia-Pacific Wood Products LLC and Georgia-Pacific Consumer Operations LLC in Arkansas since June 24, 2019." (Br. in Supp. of Pls.' Mot. for Class Cert., at 2). The Plaintiffs contend that the class is both adequately defined and clearly ascertainable and that it meets the four 23(a) certification prerequisites and the 23(b) predominance and superiority requirements. (*Id.* at 6–7, 15). In response, the Defendants argue that Rule 23 class certification is improper because (1) the Plaintiff Harris lacks standing to bring his claims against Wood Products,[1] (2) his sole common question is insufficient to

---

[1] The Defendants argue that the Plaintiff Harris lacks standing to sue Wood Products, as an employee of Consumer Ops, because Wood Products was never his employer. (Defs.' Resp. Br. in Opp'n to Pls.' Mot. for Class Cert., at 3–4). In reply, the Plaintiffs contend that the Plaintiff Harris has standing to sue both Defendants through his allegations that Consumer Ops and Wood Products are joint employers. (Reply Br. in Supp. of Pls.' Mot. for Class Cert.,

7

establish commonality under Rule 23, (3) his injury is not typical to that of other putative class members since he did not a suffer shift-differential overtime injury, (4) his pending EEOC charge makes him an inadequate class representative, and (5) he fails to show predominance of common issues since a factfinder will have to decide whether each class member's rounded time was time actually worked or not. (Defs.' Resp. Br. in Opp'n to Pls.' Mot. for Class Cert., at 1).

The Defendants' primary argument in opposition to class certification hinges on the lack of predominance of common issues due to the nature of the individualized inquiries required to establish liability as to each of the class members. They specifically contend that even if rounding occurred in their favor, the Court "would still have to determine whether class members were *actually working* during all time that was rounded" to assess liability—determinations requiring fact-specific inquiries for each class member. (Defs.' Resp. Br. in Opp'n to Pls.' Mot. for Class Cert., at 21). The Defendants rely principally on *Babineau v. Federal Express Corp.*, 576 F.3d 1183 (11th Cir. 2009), in support of their position. (Defs.' Resp. Br. in Opp'n to Pls.' Mot. for Class Cert., at 19–21).

---

at 2). The Court concludes that the Plaintiffs have adequately alleged facts, in Paragraphs 25 through 28 of their Complaint, to support the Plaintiff Harris's standing to challenge Wood Products as a joint employer of Consumer Ops. *See Littleton v. Manheim Remarketing, Inc.*, 2018 WL 11454850, at *4 (N.D. Ga. Apr. 19, 2018).

In *Babineau*, the plaintiffs sought to certify a class of FedEx employees who claimed that FedEx failed to pay hourly employees for all the time that they worked. *Babineau*, 576 F.3d at 1185. FedEx required that its employees both punch in upon their arrival to work and out upon their departure from work and that they manually enter their scheduled start and end times into a tracker for each workday. *Id.* at 1187. But FedEx only paid its employees for the scheduled time they entered into their tracker, resulting in a "gap period" between "the start/end times entered into the tracker and the punch in/out times." *Id.* "Thus, if an employee punched in at 7:45 a.m. but entered a start time of 8:00 a.m. into the tracker, there would be a fifteen[-]minute gap period for which the employee would not be paid." *Id.* The Eleventh Circuit ultimately held that the plaintiffs could not certify a class of FedEx employees premised upon their gap period claim because "individualized proof would be required to determine whether employees were actually working during the pre- and post-shift gap periods." *Id.* at 1191. The Eleventh Circuit explained:

> Here, the district court reasonably concluded that punch clock records do not provide common proof of any uncompensated work during gap periods—particularly in light of employee testimony regarding the various non-work-related activities that took place during the gap periods and the various personal reasons that employees listed for coming in early and staying late.

*Id.* at 1192.

The Defendants contend that the Plaintiff Harris faces the same problems of proof here as the plaintiffs in *Babineau* did: namely, that even if

9

he offered evidence of unlawful rounding (which the Defendant denies) of the putative class members' time punches, such evidence would not necessarily establish that the class members were actually working during the rounded time—a prerequisite to finding underpayment. (Defs.' Resp. Br. in Opp'n to Pls.' Mot. for Class Cert., at 21); Code Ark. R. 235.01.1-102(C)(2) (permitting rounding as long as "employees are fully compensated for all the time they actually work"); 29 C.F.R. § 785.48(b) (providing the same standard under the FLSA). The Defendants point to various timekeeping practices by Georgia-Pacific employees in Arkansas that substantiate the individualized nature of the inquiries:

> Some production workers clock in early, but then sit in the breakroom or go to their locker to put up their lunch or personal belongings before starting work. Sometimes workers arrive and clock-in a few minutes late, starting work after their scheduled time. At shift's end, some workers stop working, gather their personal belongings, use the restroom, or walk to a time clock in another department or near an exit, so they can clock-out 8 minutes after their shift (instead of 7 minutes after) and be rounded up to the next quarter hour. Others hang around the time clock, waiting until at least 7 minutes before the end of the shift to clock out so their time is rounded up. Other times workers engage in personal conversations during shift change before clocking out. None of this time is compensable. But sometimes workers may clock in early and immediately start work. Or someone might have to clean their workspace or wait to be relieved during a shift-change and clock out a few minutes late. This time would be compensable. The point is that whether employees are actually working during rounded time requires individualized evidence and may depend on what specific supervisors allow, each job's demands, employees' habits, shifts worked, or other factors.

(*Id.* at 21–22 (citing McCaskill Decl. ¶¶ 17–23)). Ultimately, the Defendants

10

argue that class treatment is inappropriate because each class member would require an individual liability determination regarding whether he or she was actually working when the Defendants rounded his or her time. (*Id.* at 23).

In reply, the Plaintiffs attempt to factually distinguish *Babineau*, arguing that "*Babineau* does not involve an employer's standard rounding practices, but rather involves an employer's decision to pay only for the time between scheduled shift start and end times rather than the employee's actual punch times." (Reply Br. in Supp. of Pls.' Mot. for Class Cert., at 12). They also argue that even if some individualized evidence would be required for each class member's claim, "the presence of individualized damages does not preclude a finding of predominance for purposes of Rule 23 class certification." (*Id.* at 13 (citing *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016))).

The Court concludes that *Babineau* governs the present case and that therefore the Plaintiffs have failed to establish the requisite predominance that would support certification of their proposed class. That the present case involves rounded time, and not gap periods, does not change the fact that "individualized proof would be required to determine whether employees were actually working during" the rounded time at issue here. *Babineau*, 576 F.3d at 1191. And that individualized proof for the rounded time would also be needed to make determinations as to the other underpayment practices alleged by the Plaintiffs, including the omission of unpaid rounded time from overtime

11

pay and shift differential pay. (*See* Br. in Supp. of Pls.' Mot. for Class Cert., at 3–4). This case is not one where a determination on the common questions of law or fact would leave only calculations for individualized damages; rather, even if the Court determines the Defendants' rounding policy violates the FLSA or AMWA, such a determination will not necessarily establish liability against the Defendants on behalf of the class members. Individualized issues of fact will remain as to whether each class member was actually working during the rounded time, such that they would be entitled to an award of damages. Under these circumstances, the common issues of fact cannot be said to have a more substantial "direct impact on every class member's effort to establish liability" than on "the impact of individualized issues in resolving the claim[s] . . . of each class member." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (citation omitted). As was the case in *Babineau*, the existence of these remaining issues of fact precludes a finding of predominance at present. Accordingly, the Court finds that the Plaintiffs are not entitled to certification on their proposed Rule 23 class of individuals.[2]

---

[2] Having found that the Plaintiffs fail to establish predominance of issues, the Court declines to address the issues of typicality and adequacy of representation briefed by the parties.

12

B. **Conditional Certification**

For largely the same reasons as in the predominance inquiry under Rule 23 class certification, the Court concludes that the Plaintiffs and the proposed members of their collective action are not sufficiently similarly situated to warrant conditional certification of the class under Section 216(b) of the FLSA. Even if the Plaintiffs and proposed collective members faced the same rounding policy of the Defendants, their dispositions are dissimilar as to whether each collective member was actually working during the rounded time. And though the Eleventh Circuit's "fairly lenient standard" requires only a reasonable basis for demonstrating that the plaintiffs in a FLSA collective are similarly situated, a decision to certify nevertheless remains soundly within the discretion of the Court. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952–53 (11th Cir. 2007). Here, "the similarly situated determination in terms of actual wage loss requires individual employee-by-employee . . . inquiries which are inconsistent with a collective action's goal of promoting judicial efficiency." *McElmurry v. US Bank Nat'l Ass'n*, 2004 WL 1675925, at *16 (D. Or. July 27, 2004). Such individual inquiries are sufficient to warrant denial of conditional certification at present.[3]

---

[3] The Court acknowledges that the U.S. District Court for the Western District of Arkansas conditionally certified a collective action under similar circumstances in a case litigated by counsel to the present case but that the court limited the collective to employees of the facility where the plaintiff worked. *See* Memorandum Opinion and Order at 13, *Harris v. Georgia-Pacific Wood Products, LLC*, No. 6:19-cv-06001-RTD (W.D. Ark. Apr. 11, 2019).

## IV. Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Conditional Certification, Notice, and Disclosure [Doc. 18] is DENIED, and the Plaintiffs' Motion for Rule 23 Class Certification [Doc. 36] is DENIED.

SO ORDERED, this     23rd     day of March, 2023.

                                                                             THOMAS W. THRASH, JR.
                                                                             United States District Judge

---

However, that district court did not address the *Babineau* case, despite the Defendants' reference to the case in their briefing, nor was the *Babineau* decision binding on that district court, which explains the differing result here.

14