# Settlement Agreement and Release

This Settlement Agreement and Release ("Agreement") is entered into between Plaintiffs Bruce Harris, Roy McCullum, Gearldean Payton, Ray Pickering, and Rochelle Lawson ("Plaintiffs") and Defendants Georgia-Pacific Consumer Operations LLC and Georgia-Pacific Wood Products LLC (the "Company" or "Georgia-Pacific"). Plaintiffs and the Company together are referred to as the Parties. The Parties, intending to be legally bound, hereby agree and promise as follows.

**A. Payment of Settlement Amount**

In consideration for Plaintiffs' agreement to all of the terms, conditions, and promises in this Agreement, the Company agrees to pay the total amount of eleven-thousand four-hundred fifty-eight dollars and ninety-two cents ($11,458.92), in full and complete settlement of all claims to the maximum extent permitted by law that were or could have been asserted under the allegations in the Lawsuit (the "Settlement Payment"). The Company will make the Settlement Payment directly to the payment recipient within 21 business days once the following events occur: (i) the Effective Date of the Agreement passes; and (ii) the Company receives all necessary IRS Forms and the Supplier Electronic Payment Authorization for Plaintiffs and their counsel. The Settlement Payment will be made and allocated as follows:

(i) The Company will pay Bruce Harris the gross sum of one-hundred fifty-nine dollars and fifty-two cents ($159.52), which will be subject to all legally required deductions and reported by the Company to the IRS via IRS Form W-2.

(ii) The Company will pay Bruce Harris the amount of one-hundred fifty-nine dollars and fifty-one cents ($159.51), which will not be subject to deductions or withholding and will be reported by the Company to the IRS via an IRS Form 1099.

(iii) The Company will pay Roy McCullum the gross sum of one-hundred sixty-one dollars and eight cents ($161.08), which will be subject to all legally required deductions and reported by the Company to the IRS via IRS Form W-2.

(iv) The Company will pay Roy McCullum the amount of one-hundred sixty-one dollars and seven cents ($161.07), which will not be subject to deductions or withholding and will be reported by the Company to the IRS via an IRS Form 1099.

(v) The Company will pay Gearldean Payton the gross sum of forty-three dollars and thirteen cents ($43.13), which will be subject to all legally required deductions and reported by the Company to the IRS via IRS Form W-2.

(vi) The Company will pay Gearldean Payton the amount of forty-three dollars and twelve cents ($43.12), which will not be subject to deductions or withholding and will be reported by the Company to the IRS via an IRS Form 1099.

(vii)  The Company will pay Ray Pickering the gross sum of two-hundred thirty-seven dollars and ninety-three cents ($237.93), which will be subject to all legally required deductions and reported by the Company to the IRS via IRS Form W-2.

(viii)  The Company will pay Ray Pickering the amount of two-hundred thirty-seven dollars and ninety-two cents ($237.92), which will not be subject to deductions or withholding and will be reported by the Company to the IRS via an IRS Form 1099.

(ix)  The Company will pay Rochelle Lawson the gross sum of one hundred and twenty-eight dollars and thirty-two cents ($128.32), which will be subject to all legally required deductions and reported by the Company to the IRS via IRS Form W-2.

(x)  The Company will pay Rochelle Lawson the amount of one-hundred twenty-eight dollars and thirty-two cents ($128.32), which will not be subject to deductions or withholding and will be reported by the Company to the IRS via an IRS Form 1099.

(xi)  The Company will pay Plaintiffs' counsel, Sanford Law Firm, the gross amount of nine-thousand nine hundred and ninety-nine dollars ($9,999.00), reported by the Company to the IRS via IRS Form 1099.

Plaintiffs acknowledge and agree that the Settlement Payment and other commitments by the Company constitute good and valuable consideration for the release and the other promises and terms in this Agreement and that the Settlement Payment is above and beyond any compensation and commitments to which they would otherwise be entitled absent execution of this Agreement. Plaintiffs understand and agree that they are not eligible for or entitled to any payments, wages, benefits, or remuneration from any of the Releasees, except as provided in this Agreement.

Plaintiffs acknowledge and agree that: (i) they will bear sole and exclusive responsibility for penalties actually assessed or all tax liabilities, if any, which any taxing authority, federal or state, may ultimately determine is found to be owed by him for payments made pursuant to this Agreement; (ii) they will indemnify and hold the Company harmless from all claims, liabilities, demands, assessments, penalties, and interest, if any, which may be found to be owed by the Company as a result of the Company having made payment to or on behalf of Plaintiffs hereunder; and (iii) the Company has made no representations concerning the tax liability of the funds paid under this Agreement and therefore Plaintiffs have not relied upon any such representations. In the event the IRS contests the basis under which this payment is being made to Plaintiffs by the Company, Plaintiffs agree to remit payment to the Company, within 10 days of the Company's request to do so, as reimbursement for any taxes required to be paid by Company as a result of any such IRS review or audit.

### B. Release of All Wage-and-Hour Claims

Plaintiffs unconditionally and irrevocably release the Company—and all of its current, future, and former parents, subsidiaries, companies, divisions, affiliates, owners, shareholders, members, directors, officers, employees, attorneys, insurers, benefit plans, agents and independent contractors, and the predecessors, successors, and assigns of each of them, in their individual, corporate or official capacities (collectively, the "Releasees")—from any and all wage-related claims that were or could have been asserted in the Lawsuit (defined in Paragraph C), whether arising under federal, state, or local law, statute, regulation, or ordinance or under common law, including under the Fair Labor Standards Act and the Arkansas Minimum Wage Act, and whether for backpay, damages, liquidated damages, penalties, interest, attorneys' fees and expenses, costs, and equitable or other relief arising from or related to any wage-related claims (the "Released Claims").

Except as may be necessary to enforce this Agreement, and to the fullest extent permitted by law, Plaintiffs agree not to initiate, encourage, support, join or continue any lawsuit, administrative charges or complaints, arbitrations or proceedings against any of the Releasees based in whole or in part on any Released Claim covered by this Agreement. Plaintiffs understand that they have waived and released any and all claims for money damages and equitable relief that arise out of the matters that are and may be released or waived by this Agreement.

### C. Settlement Approval and Dismissal of Lawsuit

On or about June 24, 2022, Plaintiffs Bruce Harris and Roy McCullum filed a lawsuit against the Company alleging violations of the Fair Labor Standards Act and the Arkansas Minimum Wage Act. That lawsuit was filed in the United States District Court for the Northern District of Georgia, where it is currently pending as *Harris et al. v. Georgia-Pacific Wood Products LLC et al.*, Case No. 1:22-cv-2530-TWT (the "Lawsuit"). As soon as reasonably practicable and within the deadlines set by the Court, the Parties will file with the Court a Motion for Approval of Settlement, along with the Agreement and any other necessary exhibits. In this motion, the Parties will ask the Court, among other things, to determine that the Agreement and its terms are fair and reasonable, to fully and finally approve the Settlement, and to dismiss the Lawsuit with prejudice. The Parties will, in good faith, cooperate and assist with and undertake all reasonable actions and steps to accomplish these and any other required events, and will use their best efforts to implement all terms and conditions of the Agreement.

### D. No Admission of Wrongdoing

The Parties agree that this Agreement does not constitute and will not be construed as an admission by the Company of any of the matters alleged in the Lawsuit or of any violation by the Company or any of the Releasees of any federal, state, or local law, ordinance, or regulation, or of any violation of any policy or procedure, or of any liability or wrongdoing whatsoever. Neither this Agreement nor anything in this Agreement will be admissible or construed as admissible in any proceeding as evidence of liability or wrongdoing by the Company or any of

the Releasees.  This Agreement may be introduced, however, in any proceeding to enforce the Agreement.

**E.  Additional Terms and Provisions**

  **1.  Effective Date**

This Agreement will become fully enforceable immediately once all of the following have occurred:  (i) Plaintiffs and their counsel provide fully executed copies of this Agreement; (ii) the Court grants the Motion for Settlement Approval and dismisses the Lawsuit with prejudice; and (iii) the Court's judgment becomes final and all time for any appeals has passed (the "Effective Date").

  **2.  Non-Reliance**

Plaintiffs represent and acknowledge that in executing this Agreement they do not rely, and have not relied, upon any representation or statement by Releasees or any of Releasees' agents, representatives, or attorneys that are not set forth herein; that they have read this Agreement; that they understand all of its provisions; and that they have consulted with their counsel, Sanford Law Firm, in executing this Agreement.

  **3.  Successors and Assigns**

This Agreement will be binding upon and inure to the benefit of Releasees and their affiliates, successors, and assigns, and Plaintiffs, their heirs, personal representatives, administrators, beneficiaries, and assigns.

  **4.  Not Construed Against Drafter**

Plaintiffs and Releasees acknowledge that no provision of this Agreement will be interpreted in favor of, or against, any of the Parties because any such Party or its counsel participated in the drafting thereof or because any such provision is inconsistent with any prior draft hereof or thereof.  Each Party acknowledges such Party has participated in the negotiation of this Agreement and the drafting and preparation of this Agreement, and the Parties represent and warrant that they have not been coerced into entering into this Agreement, nor has any person or entity exercised any pressure or undue influence on such Party to enter into this Agreement.

  **5.  Breach**

In the event any Party breaches this Agreement, the remaining provisions of this Agreement will remain in full force and effect for the benefit of the non-breaching Party, including, but not limited to, the release of liability set forth in Paragraph B.

6. **Severability**

The terms of this Agreement, including paragraph subparts, are severable, and if any part or subpart is found to be unenforceable, the other terms will remain in full force and effect and are valid and enforceable.

7. **Choice of Law**

This Agreement will be governed by and construed in accordance with the laws of the State of Georgia, without regard to any conflict of laws provisions.  In the event the Company is required to bring an action to enforce the non-disparagement provision of this Agreement, the Company will be entitled to reasonable attorneys' fees and costs expended in securing enforcement of its rights hereunder.

8. **Entire Agreement**

Plaintiffs further represent and acknowledge that this Agreement constitutes the entire agreement between the Parties, except as set forth herein.  Any oral or written representations, prior agreements, or understandings not reflected in this Agreement will have no force or effect, and are superseded by this Agreement, except with regard to any settlement agreement and/or release entered into by the Parties as a result of an EEOC Charge and subsequent lawsuit Plaintiff Bruce Harris filed against the Company in the Circuit Court of Sebastian County, Arkansas, *Harris v. Georgia-Pacific Consumer Operations LLC*, No. 66FCV-23-75 VI.

9. **Titles of Paragraphs**

The titles of the various paragraphs are intended solely for convenience of reference, and are not intended and will not be deemed for any purpose whatsoever to modify, explain or place any construction upon any of the provisions of this Agreement and will not affect the meaning or interpretation of this Agreement.

10. **Modification of Agreement**

This Agreement may be changed only by agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, or discharge is sought.

11. **Integration**

This Settlement Agreement and Release contains the entire agreement between the Parties and the terms of this Agreement are contractual and not a mere recital.  All oral discussions and prior agreements are merged herein.

12. **Counterparts**

This Agreement may be executed in counterparts.

**F. Additional Acknowledgements and Warranties**

By signing this Agreement, Plaintiffs acknowledge that:

(i) Plaintiffs have read this Agreement, are fully aware of and understand the terms of this Agreement and the legal effects of the Agreement, is voluntarily agreeing to those terms of their own free will, and intend to be legally bound;

(ii) Plaintiffs have chosen to execute this Agreement freely, without reliance upon any promises or representations made by the Company other than those contained in this Agreement;

(iii) Plaintiffs further acknowledge that they had a reasonable period of time to consider this Agreement, and upon such consideration, have knowingly and voluntarily entered into this Agreement and accept the benefits described herein in exchange for the terms of this Agreement that inure to the benefit of the Releasees, without duress, coercion, fraud, or undue influence;

(iv) Plaintiffs represent and warrant, to the maximum extent permitted by law, that no other person or entity has or has had any interest in the Released Claims referred to in this Agreement and that they have the sole and exclusive authority to sign this Agreement and receive the consideration specified in it, as applicable; and that they have not sold, assigned, transferred, conveyed or otherwise disposed of any of the Released Claims referred to in this Agreement;

(v) Plaintiffs represent and warrant that they have not transferred or otherwise impaired, by bankruptcy or otherwise, his ability to sign a complete and binding release of any of the claims released by them in this Agreement; and

(vi) Plaintiffs expressly agree that because there have been no merits determinations by the Court and because Defendants expressly deny any liability or wrongdoing Plaintiffs will not be deemed a "prevailing party" for the purposes of any fee shifting statute, rule, or agreement, except as necessary for Plaintiffs' counsel to recover the amount set forth in Paragraph A(xi).

**The Parties have knowingly and voluntarily executed this Agreement, as indicated by their signatures below:**

For Georgia-Pacific:

By: _____

Name:_____

Title:_____

Date:_____

Plaintiffs:

_____
Bruce Harris

Date:_____

_____
Gearldean Payton

Date:_____

_____
Rochelle Lawson

Date:_____

_____
Roy McCullum

Date:_____

_____
Ray Pickering

Date:_____